Judge Edwin A. Lombard
Lin this consolidated appeal, the Appellant, Alina Julia England, seeks review of four judgments: a March 9, 2016 judgment denying her motion to recuse Judge Naki-sha Ervin-Knott; a March 31, 2016 judgment designating the Appellee, James England, as the domiciliary parent; a June *585 10, 2016 judgment granting Mr. England’s motion for sanctions against Ms. England, and awarding him $96,450.19 in court costs, attorneys’ fees; and an August 17, 2016, judgment granting Mr. England’s Exception of No Cause of Action, dismissing with prejudice Ms. England’s Petition to Annul Judgment filed on June 3, 2016, and awarding Mr. England costs and attorney’s fees in the sum of $1,592. Finding no error, we affirm.
Facts and Procedural History
This instant appeal involves an acrimonious custody suit between the parties ultimately resulting in a judgment awarding sanctions, attorneys’ fees, and court costs to Mr. England and against Ms. England.
In 2014, Mr. England filed a petition for divorce from Ms. England, wherein he also sought joint custody of the parties’ two minor children. Ms. England, in response, filed a reconventional demand and a petition for protection from abuse, |2under La. Rev. Stat. 46:2131, wherein she sought sole custody due to Mr. England’s alleged physical abuse of her and the minor children. The parties subsequently entered into an agreement with mutual injunctions prohibiting abuse, harassment, stalking, or threatening one another. Additionally, Ms. England dismissed the petition for protection from abuse, and Mr. England consented to supervised visitation with the children. On January 26, 2015, the district court executed a judgment detailing the agreement.
On March 4, 2015, Ms. England filed a petition for protection from abuse against Mr. England asserting that he punched one of the children in the stomach during a supervised visit. She further indicated that the incident was reported to the New Orleans Police Department, the Department of Children and Family Services, and the Audrey Hepburn Care Center. Moreover, in May 2015, she filed an addendum to the petition for protection from abuse alleging:
• the minor children suffered from anxiety following visits with their father and resulting in nightmares and bedwetting;
• Mr. England twisted the arm of one of the children;
• Mr. England did not feed the children while they were with him;
• Mr. England threw one of the children into the deep end of a .pool despite the child not knowing how to swim; and,
• Mr. England once held the head of one of the children under water.
A three-day trial was held on both petitions resulting in the district court issuing a judgment dismissing the petitions with prejudice oh July 13, 2015, with reasons for judgment. Ms. England did not appeal the judgment.
Thereafter, approximately two weeks prior the custody trial, Ms. England filed a motion to recuse Judge Ervin-Knott, who denied the motion and signed an I ^expedited order for re-allotment. The motion was re-allotted to Judge Piper Griffin, who denied it on March 16, 2016. The case was then re-allotted back to Judge Ervin-Knott.[1]
Shortly thereafter, a two-day custody trial was held resulting in the parties being awarded joint and shared custody with Mr. England being designated as the domiciliary parent. The district court rendered a *586 judgment on March 31, 2016 and Reasons for Judgment.[2]
Mr. England later filed a motion for sanctions, attorneys’ fees, and court costs against Ms. England wherein he asserted that she filed numerous frivolous petitions for protection from abuse against him on her behalf and on behalf of the parties’ minor children without exercising due diligence prior to the filings. On June 10, 2016, the district court granted his motion and awarded him $95,460.19 representing reasonable attorneys’ fees, court costs, and related costs he incurred as a result of Ms. England’s March 4, 2015, and May 21, 2015 petitions. The district court also rendered Reasons for Judgment.
Thereafter, Ms. England filed a petition to annul the July 13, 2015 judgment, to which Mr. England filed an exception of no cause of action. The district court granted the exception and dismissed the petition to annul on August 17, 2016. [/The instant timely appeals followed, which were consolidated by this Court on May 1, 2017. Ms. England raises four assignments of error:[3]
1. the district court clearly erred as a matter of law and manifestly abused its discretion in denying the motion to re-cuse Judge Ervin-Knott;
2. the district court manifestly abused its discretion in designating Mr. England as the domiciliary parent;
3. the district court clearly erred as a matter of law and manifestly abused its discretion in sanctioning Ms. England in the amount of $95,450.19 for filing the March 4, 2015, and May 21, 2015, petitions for protection from abuse; and
4.the district court erred by maintaining Mr. England’s Exception of No Cause of Action and dismissing with prejudice Ms. England’s petition to annul judgment in clear violation of Louisiana law.
Motion for Recusal
Ms. England avers that Judge Er-vin-Knott violated Judicial Canon 3(6) and had ex parte communications with witnesses and other professionals relating to the case and allowed these communications to create an unfair bias against Ms. England. She alleges that Judge Ervin-Knott engaged in improper ex parte communications with various individuals: a St. Tammany Parish detective investigating child abuse allegations; a parenting coordinator; the custody evaluator, Dr. Seth Kunen; social workers, and a physician at Children’s Hospital.
She further avers that Judge Ervin-Knott admitted, in her order directing the motion for recusal for reassignment to another judge for hearing, that she did have ex parte communications with certain individuals “in order to ascertain the truth and most importantly, with the best interest of the children in mind.” The district 15court further explained that the communications were not made to give a procedural or tactical advantage to Mr. England. Ms. England contends that her recusal motion should have been granted because the substantive ex parte communications per se led the court to be biased on crucial factual issues. Lastly, she argues that her state and federal due process rights to a fair hearing before an impartial judge were *587 deprived under the circumstances; thus, she argues that recusal is the proper remedy.
The Louisiana Code of Civil Procedure sets forth the conditions that must be met for recusal. La. Code Civ. Proc. art. 151, provides in pertinent part:
A. A judge of any court, trial or appellate, shall be recused when he:
(4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties’ attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.
“A trial judge is presumed to be impartial.” Slaughter v. Board of Sup’rs of Southern University and Agr. and Mechanical College, 10-1114, p. 8 (La.App. 1 Cir. 8/2/11), 76 So.3d 465, 471, writ denied, 11-2112 (La. 1/13/12), 77 So.3d 970. We have previously explained what a mover must establish to prove that recusal is justified:
In order to justify recusal of a judge, bias, prejudice, or personal interest on the part of the judge must be of a substantial nature and be based on more than eonclusory allegations. Tamporello v. State Farm Mutual Automobile Ins. Co., 95-458 (La.App. 5 Cir. 11/15/95), 665 So.2d 503. A judge can only be removed upon a finding of actual bias or prejudice; a substantial appearance of impropriety or even a mere appearance of impropriety are not causes for removing a judge. Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 2000-1930, 2000-1931 (La.App. 1 Cir. 9/28/2001), 809 So.2d 1040.
In re Succession of Manheim, 03-0282, 03-0283, p. 8 (La.App. 4 Cir. 10/15/03), 859 So.2d 836, 840, writ denied, 03-3091 (La. 12/19/03), 861 So.2d 576.
In the instant matter, Judge Griffin denied the motion for recusal reasoning that even if the ex parte communications alleged had occurred, Ms. England did not present any facts showing that Judge Er-vin-Knott was prejudiced or interested in the case to such an extent that she would be unable to conduct fair and impartial proceedings. Judge Griffin explained that she did not deem the ex parte communications that transpired to be dispositive of whether Judge Ervin-Knott should be re-cused:
... exparte’ [sic] communication in and of itself is not the litmus test. That’s why I keep coming back to it. Even if I assume that everything you say is correct, the issue become [sic] whether or not the judge is bias [sic], prejudice [sic] or interested in the cause or outcome or bias [sic] against a party to such an extent, and I don’t find it in connection with this case, even assuming everything you said, which they have countered in their opposition, they have put forth evidence confirming, number one, that some this stuff has happened months ago but there was no outcry.[4] That some of this stuff that your client has in fact been ruled in favor of [sic] post some of the alleged actions that you think are problematic, and that being the case I don’t find evidence of bias, prejudice or interest in the cause or outcome of bias against the party. The motion to recuse is denied.
We do not find that Ms. England rebutted the presumption that Judge Ervin-Knott was impartial; furthermore, she submitted no evidence to support her claims of partiality. Her allegations against *588 Judge Ervin-Knott are of a condusory nature and there is no.evidence that any of the alleged ex parte communications reflect that Judge Ervin-Knott was actually biased or prejudiced against her. Additionally, 17as Mr. England contends, the record reflects that some of the communications at issue were either requested and/or approved by Ms. England’s attorney at the time.
Mr. England presented two e-mails that were admitted by the district court that contradicted Ms. England’s assertions. One e-mail dated July 20,2015, was sent to Judge Ervin-Knott’s law clerk from Ms. England’s attorney at the time, Jeffrey M. Hoffman, giving the law clerk the name and contact information of a physician at Children’s Hospital, for the purpose of having the judge contact the physician. The second e-mail, dated January 25, 2016, was sent from Judge Ervin-Knott’s law clerk to Dr. Kunen, with counsel for both parties carbon copied, requesting an updated evaluation prior to the custody trial and advising him that Marc Winsberg, counsel for Mr. England, would be calling him with regard to this request.
At most, the disputed communications may have given the appearance of impropriety, but, as previously mentioned, this is insufficient to mandate recusal under La. Code Civ. Proc. art. 151. This assignment of error is without merit. There has not been a showing made that the district court’s ruling is manifestly erroneous.
Designation of Mr. England as the Domiciliary Parent
Ms. England argues that the district .court erred in designating Mr. England as the domiciliary parent because the district court erroneously determined that Ms. England alienated the children from Mr. England, thereby allegedly applying the Parental Alienation Syndrome theory (PAS). The PAS theory purports that children reporting fear of- their abusive fathers are actually influenced- by their vindictive mothers to hate the father and thereby fabricate allegations of abuse. IsWe find, however, that there is no evidence of the district court basing its decision to appoint Mr. England as the domiciliary parent upon PAS.
Ms. England takes the untenable position that the district court’s description of her as engaging in alienating behavior is the equivalent of the district court applying the PAS theory in the instant matter. We do not.find that the district court’s description of Ms. England’s behavior, as also described by Dr. Kunen, equates to an application by the district court of the PAS. Use of the word “alienation” is not tantamount to the application of PAS, which the district court neither mentioned in its judgment nor its Reasons for Judgment. Our review of the record reveals that the district court described in its judgment that Ms. England had “engaged in behaviors to alienate the children from their father.” Furthermore, in its Reasons for Judgment, the district court quoted Dr. Kunen’s testimony that “ ‘Ms. England has engaged in a campaign’ to alienate the children from Mr. England.” These are the district court’s only references to alienation with regard to this issue. Appellate courts will not disturb a district court’s custody award absent a manifest abuse of discretion. Hanks v. Hanks, 13-1442, p. 8 (La.App. 4 Cir. 4/16/14), 140 So.3d 208, 214. We And that Ms. England’s argument is without merit and that there has been no showing that the district court manifestly abused its discretion in designating Mr. England as the domiciliary parent.
Sanctions Award
Ms. England’s next assignment of error is that the district court erred as a matter of law and manifestly abused its discretion in sanctioning Ms. England in *589 the amount of $95,450.19 for filing the March 4, 2015, and May 21, 2015, petitions for protection from abuse. Ms. England avers that the trial court | improperly used post-trial events and circumstances, as well as irrelevant facts, upon which to base the sanctions. However, Ms. England failed to produce evidence that district court’s holding was erroneous and that sanctions were unwarranted.
A district court’s judgment regarding sanctions under La. .Code Civ. Proc. art. 863[5] is reviewed under the manifest error or dearly wrong standard:
“Article 863 is intended only for exceptional circumstances and' is not to be used 'simply’because parties disagree as to the correct resolution of a legal matter. Fairchild v. Fairchild, 580 So.2d 513, 517 (La.App. 4 Cir.1991). On appellate review, a trial court’s finding as'to a sanctionable violation of C.C.P. art. 863 may not be disturbed unless the record furnishes no evidence to support the finding, or the finding is clearly wrong. Id., Loyola v. A Touch of Class Transp. Service, Inc., 580 So.2d 506 (La.App. 4 Cir.1991). Green v. Wal-Mart Store No. 1163, 96-1124, (La.App. 4 Cir. 10/17/96), 684 So.2d 966, 969.”
Mathis v. Mathis, 06-1589, p. 3 (La.App. 4 Cir. 7/25/07), 964 So.2d 426, 428 (quoting Green v. Wal-Mart Store No. 1163, 96-1124, pp. 4-5 (La.App. 4 Cir. 10/17/96), 684 So.2d 966, 969).
During the course of the trial on the petitions for abuse, the district court observed all of the witnesses and determined that some of them, primarily Ms. England, were not credible. The district court determined that Ms. England was consistently found to lack credibility, purposely tried to delay proceedings, alleged false abuse allegations and drove-up Mr. England’s legal costs. Ms. England, the court further observed, declined to contact any of the visitation supervisors to determine the veracity of the allegations she raised prior to .filing her petitions.
We find that Ms. England has failed to produce evidence that the district .court erroneously concluded that she misused the legal system, or that the sanctions were warranted. The trial judge presided over this matter practically from its inception and had the opportunity to observe the parties and witnesses as they testified at trial and other hearings. “Great deference is given to the findings of the trier of fact‘for they are in a better position to judge the credibility of the witnesses.’” Delta Staff Leasing, LLC v. S. *590 Coast Solar, LLC, 15-1273, pp. 3-4 (La. App. 4 Cir. 5/11/16), 194 So.3d 745, 748 (quoting Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)).
The trial court further relied on the testimony of numerous witnesses, including Dr. Kunen, as well as the lack of corroborating evidence supporting Ms. England’s allegations, to conclude that Ms. England had an agenda in filing the petitions alleging abuse, and detailed the reasons and evidence supporting this determination. For instance, the district court, both in the July 13, 2015 In,judgment— dismissing the March 4, 2015 petition for protection from abuse, and the May 21, 2015 addendum to the petition for protection from abuse—and in the June 10, 2016 judgment, reasoned that Ms. England failed to produce evidence supporting her allegations that Mr. England abused the children. Furthermore, the district court detailed its observations that the children’s accounts of the alleged abuse differed from one another, as well as from the version of Ms. England.
Additionally, the district court explained that it believed Ms. England’s lack of veracity traversed all of the custody proceedings. In its Reasons for Judgment, the district court described how Ms. England lied under oath at the August 2016 hearing regarding her communications with Mr. England’s ex-girlfriend, a Ms. Mancuso, from whom Ms. England tried to obtain information adverse to Mr. England.[6] Thus, the district court had reasonable grounds to determine that Ms. England lacked credibility, and that she was motivated to keep the children separated from their father, embarrass him, and drive-up his legal fees.
Moreover, the district court determined that the other witnesses, who served as visitation supervisors, were credible. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844. The district court noted that nine investigations were conducted by independent agencies and that not one investigation found any evidence to corroborate the allegations of abuse. Even if we were to reach a differing conclusion, based upon the record, we cannot say that 112the district court’s determination was manifestly erroneous. This assignment of error is without merit.
Exception of No Cause of Action and Petition to Annul
In her final assignment of error, Ms. England avers that the district court violated Louisiana law in granting Mr. England’s exception of no cause of action and dismissing her petition to annul the July 13, 2015 judgment, and awarding Mr. England $1,592 in attorneys’ fees and court costs, on August 17, 2016. She asserts that nullification is proper because her petition to annul on its face states a cause of action for nullity based on fraud. The district court, she argues, erroneously relied upon the testimony of Dr. Kunen in rendering its July 13, 2015 judgment dismissing her petitions for protection from abuse; however, she maintains that Dr. Kunen had fraudulently represented himself as a family violence expert.
*591 Ms. England’s second argument in support of her petition is that on its face, her petition to annul also states a cause of action for- nullity based upon the trial court’s erroneous exclusion of crucial domestic violence evidence at the hearing on her petitions from abuse. On March 30, 2015, the district court granted Mr. England’s exception of res judicata and his motion in limine, thereby excluding any evidence or testimony concerning the facts and circumstances of alleged abuse contained in Ms. England’s July 28, 2014 petition for protection from abuse. However, in writ application number 2015-C-0363, this Court reversed the district court’s judgment reasoning that the district court’s grant of Mr. England’s exception of res judicata was erroneous because evidence and testimony concerning the facts and circumstances of his alleged abuse contained in Ms. England’s July 28, 2014 Petition for Protection from Abuse were not barred by |1S principles of res judica-ta.,[7] England v. England, 15-0363, unpub. (La.App. 4 Cir. 10/26/15).
In his exception of no cause of action, Mr. England argued that Ms. England’s petition failed to state a cause of action sufficient to annul the judgment on the basis of fraud and ill practices. He averred that her allegation that Dr. Kunen fraudulently held himself out as an expert in family violence is a conclusion of fact that should not be considered in determining whether the petition states a cause of action. He further contends that Ms. England did not identify any specific actions of Dr. Kunen that could be construed as holding himself out as á family violence expert. Dr. Kunen, he maintains, was not offered or admitted as an expert 114in family violence at the hearing at issue. Furthermore, he points out that Dr. Kunen was Ms. England’s choice to be appointed the custody evaluator, and that she had the opportunity to interview him and review his curriculum vitae before suggesting him. He further maintains that Dr. Kunen submitted his report approximately a month prior to testifying, which gave Ms. England another opportunity to depose him on his report and qualifications, which she did not challenge on cross-examination when Dr. Kunen testified.'
*592 Moreover, he maintains that even if Dr. Kunen had fraudulently held himself out as an expert in domestic violence and the district court had- primarily relied on his testimony, the petition still fails to state a cause of action under La. Code Civ. Proc, art. 2004 because Ms. England was not deprived of any legal rights by Dr. Ku-nen’s alleged misrepresentation. Gladstone v. Am. Auto. Ass’n, Inc., 419 So.2d 1219, 1223 (La. 1982).
“The exception of no cause of action ‘tests the legal sufficiency of a petition by examining whether, based upon the facts alleged in the pleading, the law affords the plaintiff a remedy.’” Koch v. Covenant House New Orleans, 12-0965, p. 3 (La.App. 4 Cir. 2/6/13), 109 So.3d 971, 972 (quoting Meckstroth v. Louisiana Dept. of Transp. & Dev., 07-0236, p. 2 (La.App. 4 Cir. 6/27/07), 962 So.2d 490, 492). “A peremptory exception of no cause of action is a question of law that requires the appellate court to conduct a de novo review.” Id. [citations omitted].
Pursuant to La. Code Civ. Proc. art. 931, no evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. “The court reviews the petition and accepts all well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is entitled to the relief sought.” Meckstroth, 07-0326 at p. 2, 962 So.2d at 492 (citing Everything on’Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235-36 (La. 1993) (citation omitted)). “Louisiana utilizes fact pleading, meaning that the ‘mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action.’ ” O’Dwyer v. Edwards, 08-1492, p. 4 (La.App. 4 Cir. 6/10/09), 15 So.3d 308, 310 (quoting Montalvo v. Sondes, 93-2813, p. 6 (La. 5/23/94), 637 So.2d 127, 131). The well-pleaded factual allegations must be accepted as true. City of New Orleans v. Bd. of Comm’rs of Orleans Levee Dist., 93-0690, p. 2 (La. 7/5/94), 640 So.2d 237, 241. The burden remains with the mover. Id., 93-0690, p. 28, 640 So.2d at 253. “The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief.” Ramey v. DeCaire, 03-1299, p. 8 (La. 3/19/04), 869 So.2d 114, 119 (citing City of New Orleans, 93-0690, p. 29, 640 So.2d at 253).
Furthermore, a final judgment obtained by fraud or ill practices may be annulled. La. Code Civ. Proc. art. 2004 (A). “Under this article, the party seeking annulment must show both that the challenged judgment resulted from a deprivation of a legal right and that its ‘enforcement would be ‘unconscionable and inequitablé.’ ” Guidry v. First Nat. Bank of Commerce, 98-2383, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1033, 1036, writ denied, 00-0920 (La. 5/26/00), 762 So.2d 1106 (quoting Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983)). “Conduct which prevents an opposing pai-ty from having an opportunity to appear or to assert a defense constitutes a deprivation- of his legal rights.” Kem Search, Inc., 434 So.2d at 1070.
Nevertheless, an action for nullity is neither a substitute for an appeal, nor is it a “second chance to prove a claim that was previously denied for failure of |, (¡proof; it is imperative that courts review a petition for nullity closely.” Alexander v. La. State Bd. of Private Investigator Examiners, 15-0537, 15-0708 (La.App. 4 Cir. 2/17/17), 211 So.3d 544, 572, reh’g denied (Mar. 10, 2017) [citations omitted]. “The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals.” Id., 15-0537, *593 15-0708, pp. 46-47, 211 So.3d at 572-73 [citations, omitted].
Pursuant to our de novo review, we find that the district court did not err in granting Mr. England’s exception of no cause .of action. First, we find that Ms. England’s allegations regarding Dr. Kunen to be eon-clusory and not based on well-pleaded facts. Ms. England failed to plead facts evidencing that the district court substantially relied upon Dr. Kunen’s testimony as a “family violence expert” to the extent that his findings were the linchpin of its judgment dismissing her petitions for protection.
We note that Dr. Kunen was one of seven persons who testified during a three-day trial and he was not accepted as a family violence expert at the hearing. The district court noted that only the children, whose accounts varied from each other, and- Ms. England, who was not present when the alleged incidents occurred, testified to the abuse. The children’s psychiatrist, Dr. Daphne Glindmeyer, testified that the children were afraid of their father, but admitted that her findings were based upon the accounts of Ms. England and the children. She further testified that she had never evaluated the children in the presence of their father. Excluding Mr. England, the remaining witnesses, Mr. England’s mother, Mrs. Mary Lou England, 117and visitation supervisors, Ms. Sherri Carmouche and Dr. Leslie England,[8] were consistent in their testimony that they had not observed any abuse by Mr. England.
Lastly, we find that Ms. England’s petition fails to state a cause of action based upon our reversal of the district court’s March 30, 2015 judgment prior to the rendition of the August 2016 judgment. Albeit that the district court committed a legal error, this does not change the fact that Ms. England missed her opportunity to proffer the disputed evidence at the hearings on her petitions for abuse and appeal the district court’s July 13, 2015 judgment. “[T]he mere fact that a judgment may be contrary to the law does not render it a nullity or subject it to a claim for nullity,” In re J.E.T., 16-0384, p. 14 (La.App. 1 Cir. 10/31/16), 211 So.3d 575, 585; see also Hall v. Hall, 611 So.2d 173, 174 (La.App. 5 Cir. 1992).
Ms. England did not demonstrate that the challenged judgment resulted from a deprivation of a legal right and that its enforcement would be “unconscionable and inequitable” in the matter sub judice, This assignment of error is without merit. ■ ■
DECREE
For the foregoing reasons, we affirm the March 9, 2016, March 31, 2016, June 10, 2016, and August 17, 2016 judgments of the district court.
AFFIRMED
BELSOME, J., CONCURS IN THE' RESULT

. Ms. England filed an emergency writ application seeking review of the denial of the motion for recusal, which was denied. England v. England, 16-0252, unpub. (La.App. 4 Cir. 3/16/16). The Louisiana Supreme Court also denied her application for remedial/supervisory writs. England v. England, 16-0645, unpub. (La. 4/22/16).

. The district court rendered two judgments following the custody trial: a March 30, 2016 judgment with reasons incorporated therein; and a second judgment dated March 31, 2016, with separate Reasons for Judgment.

. Ms. England filed an application for supervisory writs in this court seeking review of the district court's denial of her motion to stay the sanctions, which was denied. England v. England, 16-0837, unpub. (La.App. 4 Cir. 9/02/16).

. It appears that Ms. England waited until March 2016 to move for recusal when she knew of some of the alleged ex parte communications since August 2015.

. La.. Code Civ. Proc. art. 863 states in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
(2) Each claim, defense, or other legal assertion in the pleading is wárranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a .reasonable opportunity for further investigation or discovery.
(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

. During a contempt hearing, Ms. England testified that she did not have a conversation with Ms. Mancuso about Mr. England allegedly taking a picture of the buttocks of one of the minor children. However, at a later hearing, the district court recounted, counsel for Mr. England introduced a Facebook message between Ms. England and Ms. Mancuso evidencing that the conversation had taken place, and that "Ms. England lied on the witness stand.”

. We explained in the writ disposition that:
[b]ecause the second Petition [of Abuse filed on March 4, 2015] states a new cause of action that did not exist when the first Petition was dismissed [by consent of the parties and later memorialized in a January 26, 2015 judgment], we find that the trial court abused her discretion by incorrectly applying the principles of res judicata to exclude evidence and testimony concerning the facts and circumstances alleged in the first Petition for Protection from Abuse from hearings on the second Petition for Protection from Abus.e and Motion to Determine a History of Perpetrating Family Violence.
We further reasoned that in consideration of the Louisiana Post-Separation Family Violence Relief Act, specifically La. Rev. Stat. 9:364:
[e]vidence of Mr. England's prior acts of abuse alleged in the first Petition for Protection from Abuse may be admissible to corroborate evidence of the more recent act of abuse in both in a hearing to determine whether Ms. England is entitled to a protective order pursuant to her second request for such an order and in a hearing to determine whether Mr. England has a history of perpetrating family violence.
At the trial of Mrs. England’s petition, the trial court can contemporaneously assess the relevance of the evidence offered (as defined in Louisiana Code of Evidence Article 401) and make admissibility determinations after balancing the prejudicial effect of such evidence with its probative value in accordance with Louisiana Code of Evidence Article 403. But we find that the trial court erred in granting the exception of res judicata and finding evidence of prior abuse inadmissible under principles of res judica-ta.

. Dr. England is Mr. England’s father.