| PLAQUEMINES PARISH GOVERNMENT | * | NO. 2019-CA-0803 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| BYRON WILLIAMS, ET AL. | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 63-278, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

Michael Lawrence Mullin
Betty Finley Mullin
LAW OFFICE OF MICHAEL L. MULLIN
401 Whitney Avenue, Suite 205
Gretna, LA 70056

COUNSEL FOR PLAINTIFF/APPELLEE

David S. Daly
Elliot M. Lonker
FRILOT, LLC
1100 Poydras Street
Suite 3700
New Orleans, LA 70163

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**JUNE 24, 2020**

*SCJ*
*EAL*
*RML*

This appeal arises from a judgment imposing sanctions under La. C.C.P. art. 863 against plaintiff/appellant, Robert A. Barnett ("Barnett") and Plaquemines Parish Government ("PPG"), where Barnett was formerly employed as a special parish attorney. The trial court's April 24, 2019 judgment ordered Barnett and PPG to pay attorney's fees in the amount of $27,690.00; costs of $1,248.00; and expenses of $2,099.56, to defendants/appellees Byron V. Williams, Jr. ("Byron, Jr."); Byron V. Williams, Sr. ("Byron, Sr."); Vernon Williams ("Vernon"); Vernon Williams Trucking Service, LLC ("Vernon Trucking"); and Byron and Vernon Enterprises LLC ("B&V Enterprises") (collectively, "Defendants"). For the reasons that follow, we affirm the April 24, 2019 judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 2016, PPG filed a "Petition for Damages, Losses and Return of Public Funds" ("Petition") against Bryon, Jr.; Vernon; Vernon Trucking; and B&V Enterprises. PPG's Petition was drafted and signed by attorney Barnett. The allegations were that the Defendants conspired to defraud PPG of public funds by illegally exploiting the position of Byron, Jr. as the PPG Director of Public Service

1

from 2007 through May 2014. The Petition asserts that Byron, Jr., as Director of Public Service, was responsible for monitoring and overseeing PPG's physical facilities, including hiring and firing employees, developing protocols for the selection of PPG venders and contractors, creating bid specifications, and recommending specific venders for particular projects. PPG also alleged that Byron, Jr. personally reviewed, approved, and signed invoices submitted by venders for work performed on PPG properties.

According to the Petition, Byron, Jr. defrauded the public, misused public funds, and breached the public trust by contracting with his own companies, and approving payment of invoices from these companies. Byron, Jr. allegedly directed business to his family-owned companies, Vernon Trucking and B&V Enterprises, and was paid for PPG work while on the payroll of these two companies, which conducted business with PPG from 2007 to 2014. The Petition also alleges the Defendants engaged in payroll fraud and conspiracy.

In the Petition, PPG named Byron, Jr. and his uncle, Vernon, as defendants under the mistaken belief that Vernon was Byron, Jr.'s father. Under the Code of Governmental Ethics:

> B. No public servant, except as provided in R.S. 42:1220, shall participate in a transaction involving the government entity in which, to his knowledge, any of the following persons has a substantial economic interest:
>
> (1) Any member of his immediate family.

La. R.S. 1112(B)(1).

The Code of Ethics defines "immediate family" as:

> children, the spouses of his children, his brothers and their spouses, his sisters and their spouses, his parents, his spouse, and the parents of his spouses.

2

La. R.S. 1102(13).

After the Petition was filed, counsel for Defendants immediately pointed out to Barnett that Vernon was Byron, Jr.'s uncle, not his father, and that the Code of Ethics did not prohibit their business dealings. Defendants demanded that the case be dismissed or sanctions would be sought pursuant to La. C.C.P. art. 863. Rather than dismissing the lawsuit, however, Barnett signed and filed a "Supplemental and Amending Petition for Damages, Losses and Return of Public Funds" ("Supplemental Petition") on November 3, 2016, naming Byron, Jr.'s father, Byron, Sr., as a party defendant. In the Supplemental Petition, PGG alleged a criminal conspiracy involving Byron, Jr., his father Byron, Sr., and his uncle Vernon, as well as two limited liability companies, Vernon Trucking and B&V Enterprises.

On March 6, 2018, Defendants filed a Motion for Summary Judgment and For Sanctions Pursuant to La. C.C.P. Art. 863 ("Motion for Summary Judgment"). On that date, defendants also filed a Motion to Continue and Re-Set Hearing on Motion for Sanctions, which the trial court granted.[1]

The trial court held a hearing on defendants' Motion for Summary Judgment on June 7, 2018, and on June 18, 2018 the trial court granted defendants' motion, and dismissed PPG's claims, with prejudice. PPG appealed the June 18, 2018 judgment to this Court, which affirmed, concluding that PPG failed to provide evidentiary support for its contention that Byron, Jr. violated La. R.S. 42:1111(A)[2]

---

[1] By agreement of the parties, the Motion for Sanctions filed along with the Motion for Summary Judgment was severed, to be brought after this Court ruled on the Motion for Summary Judgment.

[2] That Code of Ethics provision states that "[n]o public servant shall receive anything of economic value other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position . . . ."

3

by receiving money while he was serving as public works director, as a result of the invoices paid to his family-owned businesses. Further, the Court found that PPG provided no evidence of any economic benefit Byron, Jr., improperly received during his tenure as public works director. *See Plaquemines Parish Govt. v. Williams*, 18-0675 (La. App. 4 Cir. 12/19/18), 262 So.3d 1080.

On January 9, 2019, Defendants filed an Amended Motion for Sanctions, in which they requested an award of additional fees and costs accrued since the filing of the original Motion for Sanctions.

The trial court held a hearing on Defendants' Amended Motion for Sanctions on April 4, 2019. On April 24, 2019, the trial court signed a judgment granting Defendants' motion and ordering Barnett and PPG to pay Defendants' attorney's fees of $27,690.00; costs of $1,248.00; and expenses of $2,099.56.[3]

Barnett filed a timely suspensive appeal.[4]

After oral argument was held, this Court entered an order remanding the case for the sole purpose of compliance with La. C.C.P. art. 863(G), which directs the trial court to "describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed." On January 17, 2020, the trial court issued its "Basis for Sanctions Under La. C.C.P. Art. 863(G)" ("Basis for Sanctions"). On February 12, 2020, Barnett filed a supplemental brief responding to the trial court's Basis for Sanctions. On February 26, 2020, Defendants filed their own supplemental brief.

---

[3] On January 3, 2020, the trial court signed an amended judgment adding the decretal language required by this Court's September 24, 2019 order.

[4] PPG did not appeal the judgment.

4

## DISCUSSION

**Standard of Review**

"On appeal, this Court reviews a trial court's findings of a violation of LSA-C.C.P. art. 863 to determine whether the record furnishes no evidence to support the finding, or the finding is clearly wrong." *John W. Fisk Co. v. Michel*, 97-2105 p. 2 (La. App. 4 Cir. 3/25/98), 709 So.2d 1061, 1063 (citing *Borne v. New Orleans Health Care, Inc.*, 616 So.2d 236, 239 (La. App. 4 Cir. 1993), *writ denied*, 623 So.2d 1332 (La. 1993)). "After a court determines that a violation of LSA-C.C.P. art. 863 occurred, it has considerable discretion imposing the type and severity of sanctions." *Id.*

**Sanctions Pursuant to La. C.C.P. art. 863**

La. C.C.P. art. 863 provides, in pertinent part:

> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information and belief formed after reasonable inquiry, he certifies all of the following:
>
> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
>
> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
>
> (3) Each allegation or other factual assertion in the pleading has evidentiary support or for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

5

* * * * * * *

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

"Article 863 requires the attorney or litigant to make an objectively reasonable inquiry prior to signing the pleadings." *Fisk*, 97-2105, p. 3, 709 So.2d at 1064. "Subjective good faith does not satisfy the duty of reasonable inquiry." *Id.* "Article 863 is intended only for exceptional circumstances and is not to be used simply because the parties disagree as to the correct resolution of a legal matter." *England v. England*, 16-0936, 16-1229, p. 9 (La. App. 4 Cir. 6/28/17), 223 So.3d 582, 589. "The duties are personal and non-delegable." *Fisk*, 97-2105, p. 3, 709 So.2d at 1064. "The signing attorney must satisfy himself, by application of his own judgment, that the pleading is factually and legally responsible." *Id.*

**Assignment of Error**

Barnett has a single assignment of error[5]:

Whether the trial court erred as a matter of law in finding Barnett's conduct in filing the lawsuit and continuing to prosecute it as not having the *slightest justification* and not being *objectively reasonable*, when the acts were done pursuant to Parish Resolutions, not only authorizing the investigation into appellees, but also authorizing the filing of the instant lawsuit, and the continuation of that lawsuit? [Emphasis in original.]

---

[5] Barnett's first and second assignments of error regarding the trial court's failure to articulate the basis for sanctions are moot in light of the trial court's compliance with this Court's order to issue a "Basis for Sanctions."

6

**Barnett's Evidence**

Barnett contends that he was retained as special counsel for the Plaquemines Parish Attorney's Office to investigate and file suit against numerous parties, including Defendants, for reimbursement of public funds allegedly improperly expended on PPG projects, in which Byron, Jr. allegedly personally participated in, and financially gained from, while serving as a full time PPG supervisory employee from 2007 to 2014. As part of the investigatory process, Barnett attested that he met with individual Parish Council members both personally and in executory session, the Parish President, and the Parish Attorney's Office, to review evidence that had been provided to Barnett and that had been gathered during the investigatory process. That investigation was done pursuant to a resolution authorized by the Plaquemines Parish Council. On June 23, 2016, Resolution 16-204 was passed by the Parish Council authorizing the lawsuit at issue here.

At the hearing on the Motion for Sanctions, Barnett offered the following evidence that he says can be reasonably relied on to support allegations that Byron, Jr.'s family and/or family-owned businesses were improperly receiving Parish funds, and to form a reasonably objective basis to proceed with a claim against Byron, Jr.

- An invoice on B&V Enterprises letterhead in the amount of $9,112.48 for hauling sand and rock for PPG on 9/4/08 and 9/05/08. Barnett asserts that B&V is partially owned by Byron, Sr., father of Byron, Jr., an employee of Plaquemines Parish. Barnett alleges that, as such, B&V Enterprises was barred from performing work for PPG under the Code of Ethics.

- Board of Ethics Disclosure Statement for 2014. Barnett asserts that Byron, Jr. was 100% owner of Byron Williams Trucking while he was employed by PPG in 2013.

7

- Jurea LaFrance Affidavit dated July 28, 2017. LaFrance was Director of Public Service for PPG. LaFrance attested that she personally saw dump trucks owned by "VJs Trucking," "Bienemy Trucking," and "Vernon and Byron Trucking" hauling dirt from PPG stockpiles between 2007 and 2010. LaFrance also attested that she saw Byron, Jr. at the site and that he "instructed [her], on more than one occasion to not speak to any of the truck drivers while at the site."

- Edward Theriot Affidavit dated May 16, 2018. Theriot was the Chief Administrative Officer for the Parish of Plaquemines from January 2015 until January 2017. Theriot attested that he reviewed Byron, Jr.'s Disclosure Statement showing that he was employed by Bryon Williams Trucking and Vernon Trucking while employed by PPG in 2013.

- Michelle Wilcox Affidavit dated May 29, 2018. Wilcox attested that she was former Parish President Nungesser's campaign manager/executive assistant in 2009. She also attested that in late 2011 and early 2012, the financial records of Nungesser did not accurately coincide or match the financial records of PPG. Wilcox testified that there were "two sets of books" that did not accurately reflect disbursements to Byron, Jr. or immediate family members, which may have been evidence of improper payments.

Barnett contends that the documents and testimony identified above showed potential misuse of Parish funds and improper work being performed by Byron, Jr., for which he was improperly compensated with Parish funds. According to Barnett, only after the documentation was shown to the Parish Council was a resolution passed authorizing suit against Byron, Jr. Barnett concludes that he had an overwhelmingly objectively reasonable basis and substantial justification to move forward with the Byron, Jr. lawsuit, and that sanctions should not have been awarded.

**Defendants' Evidence**

Defendants assert that, before filing suit against Byron, Jr., Barnett should have made a reasonable inquiry as to: (1) the family relationship between Byron, Jr. and Vernon; (2) the dates of Byron, Jr.'s employment at PPG; (3) the lack of

PPG payment of the erroneous invoice from B&V Enterprises; (4) the Defendants' non-receipt of any improper payment by PPG.

Defendants countered Barnett's evidence as follows:

- The Invoice: Byron, Jr., Vernon, and Byron, Sr. attested that the signature on the B&V Enterprises invoice was that of Vernon, not Byron, Jr., and was issued by mistake on B&V Enterprises letterhead. Vernon and Byron, Sr. attested that the invoice was never paid by PPG, having been made in error as reported to PPG shortly after issuance of the invoice. Byron, Jr. stated he had no knowledge of this invoice.

- Bryon, Jr.; Byron, Sr.; and Vernon testified that Byron, Jr. is Vernon's nephew, not his son.

- Ethics Board Disclosure Statement: Byron, Jr. testified that he was a full-time employee of PPG until May 2014. He stated that after he was terminated by Nungesser in 2014, he went to work for his uncle, Vernon, as office manager, dispatcher and truck driver. Byron, Jr. stated he did not work for Vernon or any of his companies at the same time as he worked for PPG. He also testified that while he was a PPG employee, he did not work for any company in which his father, Byron, Sr., had an interest.

- Payments: Byron, Jr. attested that the only checks made payable to him during his employment by PPG were payroll checks and reimbursement for expenses. The only check payable to his father, Byron, Sr., was a PPG check for jury duty.

- Byron, Sr. testified that he was a part owner of B&V Enterprises along with his brother Vernon, he never did business with PPG, and he never received any payments from PPG. He stated that all checks issued by Vernon Trucking to Byron, Jr. were dated after May 2014, when Byron, Jr. left employment with PPG.

- Thomas Serpas Deposition. Serpas was PPG's finance manager. Serpas testified that other than payroll checks, the only other checks issued to Byron, Jr. were for reimbursement and travel. He stated that one check was issued to Byron, Sr. for jury duty. No PPG checks had been issued to B&V Enterprises.

- Brenda Stanifer Deposition. Stanifer was PPG's purchasing agent. Stanifer testified that after reviewing all records related to defendants, she did not find any payments to B&V Enterprises for the period from January 1, 2007 through December 31, 2014.

9

**Trial Court's Basis for Sanctions**

At this Court's request, the trial court issued its reasons for awarding sanctions against Barnett and PPG pursuant to La. C.C.P. art. 863(G) as follows:

> After reviewing the pleadings and the evidence offered by Barnett and defendants, the trial court concluded as follows:
>
> The original and supplemental and amending petitions contain very serious allegations of what are essentially unethical and criminal actions on the part of the defendants. Barnett asserted in his affidavit and his opposition memorandum that this suit was filed after "the exhaustive investigatory process was completed." The pre-filing investigation conducted by PPG through the late President Cormier and Interim President Theriot, along with Barnett, cannot be considered exhaustive. The evidence of payments by PPG to the various defendants would have been in PPG's own records and would not have required discovery of information in the control of the defendants. Had such records been properly examined by PPG before filing suit, it would have been immediately evident that there was no factual basis for pursuing the defendants for illegally receiving government payments.
>
> Moreover, Theriot testified in a deposition that he knew that Vernon Williams was Byron, Jr.'s uncle when he was introduced to Vernon during Byron, Jr.'s campaign for parish president in 2014, some two years before Theriot signed the verified original petition containing the erroneous allegation that Vernon was Byron Jr.'s father. PPG had no legal or factual basis for pursuing a claim against Vernon Williams or Vernon Williams Trucking based on an alleged violation of governmental ethics laws because an uncle was not included in the definition of an immediate family member under La. R.S. 42:1102.
>
> Accordingly, the conduct of both PPG and Barnett constituted a violation of Article 863, and sanctions were duly imposed.

A trial court's finding as to a sanctionable violation of Art. 863 may not be disturbed unless the record furnishes no evidence to support the finding or the finding is clearly wrong. *Borne,* 616 So. 2d at 239. Based on our review of the facts under the "clearly wrong" standard of review, we agree with the trial court that Barnett failed to make an objectively reasonable inquiry into: (1) the family relationship between Vernon and Byron, Jr.; (2) the dates of Byron Jr.'s employment by PPG; (3) the lack of PPG payment of the erroneous invoice by

10

B&V Enterprises; and (4) any improper payments by PPG to Bryon, Jr. and Vernon.

Despite being advised of his mistake in naming Vernon as a defendant, Barnett did not admit his error and dismiss Vernon, but rather "doubled down" and added Bryon, Sr. as a defendant and alleged a conspiracy to defraud Plaquemines Parish among Byron, Jr.; Byron, Sr.; and Vernon. Barnett heard his own PPG witnesses, Thomas Serpas and Brenda Stanifer, testify at their depositions that no improper payments were ever made to the Defendants. Nevertheless, Barnett refused to dismiss the suit.

We also reject Barnett's argument that, before he signed the original Petition, he met numerous times with PPG officials, reviewed voluminous documents with them, and obtained PPG council resolutions authorizing the suit. Article 863 imposes an affirmative duty on the signing attorney, which is personal and non-delegable. *Fisk*, 97-2105, p. 3, 709 So.2d at 1064.

## CONCLUSION

The gravamen of Barnett's lawsuit for improper payments is based upon an invoice to PPG issued by mistake for which payment was never made, and that mistake was correctly promptly. Barnett also erroneously assumed that the signature on the invoice was that of Byron, Jr., when it was actually Vernon's signature. Although Barnett stated that he performed an "exhaustive investigatory process," Barnett conducted no discovery in the many months between filing suit and the ruling on Defendants' summary judgment. And as the trial court stated, had PGG's records been properly examined by Barnett before filing suit, it would have been immediately evident that there was no factual basis for pursuing the Defendants for illegally receiving government payments. For all these reasons, we

11

affirm the trial court's April 24, 2019 judgment awarding attorney's fees, costs, and expenses against Barnett and PPG and in favor of Defendants.

**AFFIRMED**